873 F.2d 240
 UNITED STATES of America, Plaintiff,
and
Quileute Makah, Lummi, Muckleshoot, Squaxin Island,
Skokomish, Lower Elwha, Snoqualmie, Duwamish, Stillaguamish,
Sauksuiattle, Nisqually, Swinomish, Tulalip, Puyallup,
Quinault, Upper Skagit, Yakima, Nooksack, Steilacoom,
Samish, Snohomish and Port Gamble Clallam Indian Tribes,
Plaintiffs-Intervenors/Appellees,
v.
STATE OF WASHINGTON, Defendant-Appellant.
 No. 83-4265.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 11, 1989.
Decided May 1, 1989.
 
 David E. Walsh, Deputy Atty. Gen., Olympia, Washington, for defendant-appellant.
 Philip E. Katzen, Seattle, Wash., for plaintiffs-intervenors/appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, TANG and WIGGINS, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The State of Washington appeals the district court's award under 42 U.S.C. Sec. 1988 of attorneys' fees and costs to appellee Indian tribes for participation in United States v. Washington.[1] For the reasons stated in U.S. v. Washington, 813 F.2d 1020 (9th Cir.1987), we reverse.
 
 BACKGROUND
 
 2
 The factual and procedural background of this case is set out extensively in Washington v. Fishing Vessel Ass'n, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979), and succinctly set forth in U.S. v. State of Wash., 813 F.2d 1020, 21-22 (9th Cir.1987).
 
 DISCUSSION
 
 3
 Basis of the award: partial summary judgment
 
 
 4
 The district court concluded that an award of attorneys' fees was appropriate under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 for Phase II of the case "because the intervening tribes have succeeded in establishing rights secured by federal law in an action that is based in part on claims involving constitutionally-secured rights." The district court awarded Sec. 1988 fees "because the plaintiff tribes had prevailed in a motion for partial summary judgment, establishing the right to have hatchery-bred fish included in their treaty-based allocation of salmon and steelhead trout, and to have such treaty fish protected from environmental degradation."
 
 Phase I Attorney Fee Award Reversed
 
 5
 This court reversed the award of attorneys fees in Phase I, and observed that:
 
 
 6
 [T]he underlying issue in this appeal is whether the Tribes stated a claim under Sec. 1983. We hold that they did not. This case deals not with civil or Fourteenth Amendment rights, but with the interpretation of a treaty--a struggle among sovereigns for the "right of taking fish ..." 10 Stat. 1133. We therefore reverse the district court's order awarding attorneys' fees.
 
 
 7
 United States v. State of Washington, 813 F.2d 1020, 1024 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988).[2]
 
 
 8
 In light of our reasoning in the Phase I fee reversal, the district court's reliance on the applicable treaties as U.S. law securing civil rights is in retrospect incorrect. We reversed the fee award in Phase I because the Tribes' treaty interpretation claims do not give rise to a claim cognizable under Sec. 1983. The judgment in Phase II included hatchery-raised fish in the allocable fish population. Summary judgment on this issue resulted from treaty interpretation and the award of fees in Phase II must therefore be reversed in accordance with United States v. Washington, 813 F.2d 1020, 1023 (9th Cir.1987).
 
 There, as here:
 
 9
 The dispositive question ... is whether the Tribes have stated a claim under 42 U.S.C. Sec. 1983 for which attorneys' fees are available under 42 U.S.C. Sec. 1988. This is answered by examining the character of the principal question that came before the Supreme Court in Fishing Vessel. 813 F.2d at 1022-23.
 
 
 10
 There is no doubt that the Supreme Court considered the principal question to be the "character of th(e) treaty right to take fish." Fishing Vessel, 443 U.S. at 662, 99 S.Ct. at 3062 (emphasis added).
 
 
 11
 Id. at 1022.
 
 
 12
 It is apparent throughout the opinion the Supreme Court was making a determination of what exact rights each party had to the fish. As the Court stated, it granted certiorari "to interpret this important treaty provision." Id. [443 U.S.] at 674, 99 S.Ct. at 3068. There was no discussion of the state violating the Indians' rights under the treaty or under the Fourteenth Amendment.
 
 
 13
 Id.
 
 
 14
 This language describes the same case at issue here. Phase I concerned the tribes' treaty based right to harvest fish passing through their fishing areas. Phase II merely extends that right to hatchery fish. Therefore Phase II cannot be characterized as a civil rights proceeding.
 
 Accordingly, the award of fees below is
 
 15
 REVERSED.
 
 
 
 [1]
 United States v. Washington, 384 F.Supp. 312 (W.D.Wash.1974), aff'd, 520 F.2d 676 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97, rehearing denied, 424 U.S. 978, 96 S.Ct. 1487, 47 L.Ed.2d 750 (1976); 459 F.Supp. 1020 (W.D.Wash.1978), aff'd sub nom. Puget Sound Gilnetters Ass'n v. U.S. District Court for the Western District of Washington, 573 F.2d 1123 (9th Cir.1978), aff'd in part, vacated in part, and remanded sub nom. Washington v. Fishing Vessel Ass'n, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823, modified, 444 U.S. 816, 100 S.Ct. 34, 62 L.Ed.2d 24 (1979)
 
 
 [2]
 Judge Orrick did not have the benefit of our decision reversing the award of fees in Phase I when he awarded fees in Phase II